UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHERYL M. | : |
| | : |
| v. | :    C.A. No. 25-00019-AEM |
| | : |
| FRANK BISIGNANO, | : |
| Commissioner | : |
| Social Security Administration | : |

**MEMORANDUM AND ORDER**

Plaintiff Cheryl is 56 years old and suffers from severe impairments of lumbar back disorder, bilateral knee disorders, and bilateral carpal tunnel syndrome (post left release surgery). (Tr. 20, 38.) Cheryl has an associate's degree in video and radio production and worked as a UPS clerk from 1993 until a back injury in 2020. (Tr. 25, 38-39.) The Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denied Cheryl's claims for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). (Tr. 14-27.)

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. Based upon my review of the record, the parties' submissions, and independent research, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Cheryl is not disabled within the meaning of the Act.

    **I.**     **PROCEDURAL HISTORY**

Cheryl first filed applications for SSDI and SSI on March 14, 2022, with an alleged disability onset date of September 12, 2020. (Tr. 17.) Her application for SSDI was denied initially on June 10, 2022 (Tr. 109-10) and her application for SSI was denied initially on June 20, 2022. (Tr. 111-14.)

Cheryl filed additional applications for SSDI and SSI on August 9, 2022 (Tr. 17) due to both mental and physical impairments including lumbar back disorder, bilateral knee disorders, bilateral shoulder disorders, bilateral carpal tunnel syndrome, obesity, hypertension, and anxiety, and alleging the same onset date. (Tr. 17, 20.)

Cheryl's August 9, 2022 applications were denied initially on October 21, 2022 (Tr. 122-25, 127-30) and again on reconsideration on April 11, 2023. (Tr. 133-35, 137-39.) Cheryl requested an Administrative Hearing that was held on November 2, 2023 before an Administrative Law Judge (the "ALJ"). (Tr. 32-70.) Cheryl was represented by counsel at the hearing and testified; a Vocational Expert (the "VE") also testified. *Id.* The ALJ issued a decision unfavorable to Cheryl on January 4, 2024. (Tr. 14-27.) The Appeals Council denied Cheryl's request for review on November 8, 2024. (Tr. 1-5.)

Cheryl timely appealed by filing her Complaint on January 13, 2025, seeking to reverse the decision of the Commissioner and remand for further proceedings. (ECF No. 1.) On August 8, 2025, Cheryl filed a Motion to Reverse the Decision of the Commissioner. (ECF No. 14.) On August 27, 2025, the Commissioner filed a Motion to Affirm the Commissioner's Decision. (ECF No. 16.) Cheryl did not file a reply.

## II.    STANDARD OF REVIEW

The Commissioner's findings as to any fact "shall be" conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The determination of substantiality is based upon an evaluation of the record as a whole. *Frustaglia v. Sec'y Health & Hum. Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); *Brown v. Apfel*, 71

F. Supp. 2d 28, 30 (D.R.I. 1999), *aff'd*, 230 F.3d 1347 (1st Cir. 2000) (per curiam). And the Court must consider evidence detracting from evidence on which Commissioner relied. *See Wendy M. v. Bisignano,* No. CV 24-208MSM, 2025 WL 2237531, at *2 (D.R.I. Aug. 6, 2025) (citing *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986)), *report and recommendation adopted,* No. 1:24-CV-00208-MSM-PAS, 2025 WL 2662534 (D.R.I. Sept. 17, 2025).

The Court's role in reviewing the Commissioner's decision is limited. *Brown*, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. *Thomas P. v. Kijakazi*, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), *report and recommendation adopted by text order* (D.R.I. Mar. 31, 2022). Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the Court would have reached a contrary result as finder of fact. *Rodriguez Pagan v. Sec'y Health & Hum. Servs.*, 819 F.2d 1, 3 (1st Cir. 1987); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

### III.     ALJ DECISION

The ALJ must follow a five-step process in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at Steps One through Four, while the Commissioner bears the burden at Step Five. *Wells v. Barnhart*, 267 F. Supp. 2d 138, 144 (D. Mass. 2003).

Here, the ALJ determined at Step One that Cheryl had not worked at a level that rose to substantial gainful activity since September 12, 2020, the alleged disability onset date. (Tr. 20.) At Step Two, the ALJ found that her lumbar back disorder, bilateral knee disorders, and bilateral carpal tunnel syndrome (post left release surgery) were severe impairments. *Id.*

At Step Three, the ALJ found that Cheryl did not have an impairment or combination of impairments that met or medically equaled a Listing. (Tr. 21.) The ALJ determined that Cheryl had

the residual functional capacity (the "RFC")[1] to perform light work with the following limitations: she can occasionally stoop, crouch, crawl, or kneel; frequently balance; occasionally climb ramps/stairs; cannot climb ladders/ropes/scaffolds; frequently do bilateral handling and fingering; occasionally do overhead bilateral reaching; frequently do bilateral reaching in all other directions; cannot do production rate or pace work such as assembly-line type work; can do individual table/bench work; and must avoid concentrated exposure to hazards such as dangerous machinery (excluding motor vehicles) and unprotected heights. (Tr. 21-22.) To support this finding, the ALJ relied on the medical opinions of state agency medical consultants Dr. Elaine Hom and Dr. Mitchell Pressman. (Tr. 24.)

At Step Four, the ALJ found that Cheryl is unable to perform any past relevant work. (Tr. 25.) Finally, at Step Five, the ALJ relied on the VE, considered Cheryl's age, education, work experience, and RFC, and concluded that there are jobs that exist in significant numbers in the national economy that she can perform. *Id.*

## IV. ANALYSIS

Cheryl argues that the ALJ (1) failed to properly consider the supportability and consistency of the prior administrative medical findings; (2) failed to consider her ability to complete a normal workday and workweek; and (3) failed to consider the side effects of her medication. (ECF No. 14 at 2.) The Court reviews each of Cheryl's three arguments in turn.

---

[1] RFC is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

### A. The ALJ's Evaluation of the Prior Administrative Medical Findings

Cheryl argues that the ALJ erred as a matter of law by failing to properly evaluate the "supportability" and "consistency" of the medical opinions of state agency medical consultants Dr. Hom and Dr. Pressman when he stated that he found them "persuasive." (ECF No. 14 at 5.) She further asserts that the ALJ failed to reconcile the state agency medical consultants' medical opinions with later "abnormal" findings in the record. *Id.* at 9-10. The Commissioner counters that the ALJ's reasoning allows for the "inference" that he found the opinions supported and consistent with the record and the ALJ did not err by independently reviewing medical evidence post-dating the state agency medical consultants' reports because none of that later evidence showed a sustained or material change in Cheryl's condition. (ECF No. 16 at 2, 9.) The Commissioner asserts that remand for further discussion of the RFC findings would be an "empty exercise" because "there is no reasonable possibility that it would change the outcome of this case." *Id.* at 2, 7-8.

Social Security Administration ("SSA") regulations require adjudicators to "evaluate the persuasiveness of medical opinions and prior administrative medical findings" pursuant to a series of factors. 20 C.F.R. § 404.1520c(a). The most important factors to be considered when evaluating persuasiveness are the "supportability" and "consistency" of the medical opinions and prior administrative medical findings; indeed, these are typically the only factors the ALJ is required to articulate. *Id.* § 404.1520c(b)(2) (indicating that the ALJ "will explain" how he considered the supportability and consistency factors and "may, but [is] not required to" explain how he considered other factors); *Vanessa C. v. Kijakazi*, C.A. No. 20-363MSM, 2021 WL 3930347, at *3 (D.R.I. Sept. 2, 2021), *report and recommendation adopted*, C.A. No. 20-cv-00363-MSM-PAS, 2021 WL 8342850 (D.R.I. Nov. 2, 2021). Pursuant to these factors, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)

or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim," then "the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1)-(2). "While the applicable regulation does not articulate the depth with which the ALJ must describe 'supportability' and 'consistency' factors, an ALJ is still tasked with explaining how [he] considered them." *Katheryn H. v. King*, C.A. No. 24-cv-253-JJM-LDA, 2025 WL 521137, at *4 (D.R.I. Feb. 18, 2025).

The ALJ stated that he found the "prior administrative medical findings 'persuasive' to the extent that they are consistent with the physical residual functional capacity" that he prescribed for Cheryl. (Tr. 24.) He further noted that to the extent that the prior administrative medical findings were "more or less restrictive than the physical 'RFC' found herein, [he] considered the claimant's testimony at the Hearing, particularly in reference to her daily activities which was not considered by the state agency consultants." *Id.*

Cheryl contends that the aforementioned language in the ALJ's decision demonstrates that he failed to properly evaluate the supportability and consistency of the opinion evidence presented by the state agency medical consultants. (ECF No. 14 at 8.) The Commissioner acknowledges that it "might have been preferable for the ALJ to separately and explicitly apply the supportability and consistency factors to Dr. Hom's and Dr. Pressman's unrebutted physical RFC findings," but argues that any error in the ALJ's discussion of the evidence is harmless. (ECF No. 16 at 7-8.) The Court agrees with the parties that the ALJ should have more clearly articulated the required supportability and consistency factors when he deemed the state agency medical consultants' medical findings "'persuasive.'" (Tr. 24.)

Although Cheryl contends that this error warrants remand,[2] a reviewing Court may uphold an ALJ's decision "if the likely outcome on remand is clear and the same as that reached by the ALJ." *Heidi M. v. Berryhill*, C.A. No. 17-412PAS, 2018 WL 6788034, at *2 (D.R.I. Dec. 26, 2018). In such circumstances, the error is harmless and the ALJ's decision should be upheld. *Id.*

In formulating the RFC, the ALJ considered Cheryl's statements regarding her abilities, including that she "stated that she is incapable of any significant or prolonged lifting, reaching, sitting, standing, walking, bending, squatting or kneeling," but noted that her statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the evidence in the record and her description of her daily activities. (Tr. 22-23.) Before addressing the persuasiveness of the two state agency medical consultants' findings, the ALJ summarized Cheryl's treatment history going back to September 2020, including evidence that was before the state agency medical consultants regarding Cheryl's consultations with orthopedist Dr. William Brennan from September 2020 to May

---

[2] Counsel for Plaintiff included two citations in support of the proposition that courts in the First Circuit have held that a failure to address the supportability and consistency factors warrants remand. (ECF No. 14 at 9.) This Court was unable to locate either of the cited cases. In response to the Court's request for more information, Counsel filed a supplemental brief (ECF No. 17) that raised more questions than it answered. First, Counsel claimed that the citations as drafted were "incomplete," but the corrected citations were to two cases from outside this Circuit even though they were supposed to support an assertion about *this* Circuit. *Id.* The brief provided no further explanation, leaving this Court to ponder how Counsel could have used a Westlaw pin cite from a 2023 decision out of the Court of Appeals for Veterans Claims when he meant to cite a 2021 decision out of the Northern District of Illinois, or how he cited *Cyrese L. v. Kijakaz* from the District of Oregon instead of *Cyr v. Kijakazi* from the District of Maine. Counsel went on to state that he had in fact "intended to cite" two entirely *different* cases from the District of Massachusetts (*id.*), one of which does not directly support the point for which he claims he intended to cite it, further perplexing the Court. Counsel is cautioned that he needs to include accurate citations and is warned that citing to case law that does not exist could be sanctionable under Federal Rule of Civil Procedure 11 and the Rhode Island Rules of Professional Conduct. *See, e.g.*, *Mavy v. Comm'r Soc. Sec. Admin.*, No. CV-25-00689-PHX-KML, 2025 WL 2355222 (D. Ariz. Aug. 14, 2025); *see also* R.I. Rules of Pro. Conduct R. 3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by a lawyer.").

2021 for back pain and with orthopedist Dr. Scott Allen from May to August 2022 for left wrist pain and carpal tunnel syndrome. (Tr. 23.) The ALJ noted that Cheryl had a gap of over a year in her orthopedic treatment. *Id.*

The reports by state agency medical consultants Dr. Hom and Dr. Pressman are the only prior administrative medical findings in the record regarding Cheryl's physical limitations. As to consistency, the ALJ correctly noted that no treating physician opined on Cheryl's physical limitations (Tr. 24), and thus no other opinions in the record that qualify as "medical opinions" pursuant to the regulations. *See* 20 C.F.R. § 404.1513(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions."). The ALJ did not accept the prior administrative medical findings wholesale, but rather considered Cheryl's testimony regarding her symptoms and daily activities and he added postural and manipulative limitations to her RFC. (*Compare* Tr. 21-22 *with* Tr. 86, 95.)

Cheryl also contends that there are conflicts between the state agency medical consultants' findings and additional treatment records, and that the ALJ erred in considering and resolving those conflicts on his own. (ECF No. 14 at 9-10.) The Commissioner responds that the ALJ had the authority to review later evidence because nothing in that evidence materially detracts from the state agency medical consultants' findings. (ECF No. 16 at 9-10.) An ALJ is typically free to evaluate later submitted evidence as long as it does not contain evidence of "sustained (and material) worsening in Plaintiff's condition" and does not "credibly establish the sort of change in condition after the last evaluation that would require the ALJ to consult yet another medical expert to evaluate the new evidence." *Phan v. Colvin*, No. CA 13-650L, 2014 WL 5847557, at *15 (D.R.I. Nov. 12, 2014), *report and recommendation adopted*.

Dr. Hom reviewed records from Dr. Brennan and Dr. Allen, as well as Cheryl's primary care physician Dr. Turilli. (Tr. 73-75.) Dr. Pressman reviewed the same as well as additional records regarding Cheryl's July 2021 back surgery and August 2022 carpal tunnel release. (Tr. 91-92.) The only evidence in the record before the ALJ that was not contemplated by the state agency medical consultants is an August 26, 2021 visit to Dr. Franklin Mirrer for right knee and thigh pain that Cheryl was experiencing after her back surgery, for which she was prescribed physical therapy and sought no additional treatment (Tr. 23, 524), and a January 17, 2023 visit to Dr. Turilli at which Cheryl denied musculoskeletal issues and had normal range of motion. (Tr. 375-76.) Contrary to Cheryl's characterizations, there are no "later abnormal findings" that need to be reconciled with the state agency opinions (ECF No. 14 at 9) and the ALJ was well within his authority to consider the limited additional evidence in the record on his own. *See Phan*, 2014 WL 5847557, at \*15.

In conclusion, the ALJ's failure to properly articulate the supportability and consistency of the state agency medical consultants' opinion is harmless error because the ALJ's weighing of the state agency medical consultants' opinion evidence and his determination of Cheryl's RFC is well supported by substantial evidence.

### B. Workday and Workweek

Cheryl next contends that the ALJ erred as a matter of law by failing to consider her ability to complete a normal workday and workweek when crafting her RFC. (ECF No. 14 at 11-13 (citing Tr. 259-66).) The Commissioner points out that this argument has been rejected by this Court numerous times[3] and is not relevant given the lack of dispute in the record about mild (not moderate) limitations. (ECF No. 16 at 11-12.)

---

[3] As noted in the Commissioner's brief (ECF No. 16 at 11-12), this Court has repeatedly and routinely dispatched this argument. *See, e.g., Emily C., v. Dudek*, C.A. No. 24-00324-LDA, 2025 WL 1263715,

Per SSA regulations, the ALJ is required to assess a claimant's mental and physical abilities and then determine the RFC for work activity "on a regular and continuing basis." 20 C.F.R. § 404.1545(b)-(c). Social Security Ruling 96-8P provides that "'a regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.'" 61 Fed. Reg. 34474, 34475 (July 2, 1996); *see Thomas L. v. O'Malley*, C.A. No. 24-00195-WES, 2024 WL 4948805, at *8 (D.R.I. Dec. 3, 2024), *report and recommendation adopted by text order*, (D.R.I. Jan. 27, 2025). This Court also has noted that state agency medical consultants similarly "are tasked with assessing a claimant's capacity to sustain work over a normal workday and workweek on an ongoing basis, and to do otherwise would, of course, provide no insight into a claimant's actual functioning capacity." *Emily C. v. Dudek*, C.A. No. 24-00324-LDA, 2025 WL 1263715, at *7 (D.R.I. May 1, 2025). Cheryl points to no authority for a departure from the numerous cases out of this District finding that an RFC is, "by definition," an assessment of her ability to do work for eight hours a day, five days a week. *See, e.g.*, *Thomas L.*, 2024 WL 4948805, at *8.

The ALJ detailed that the evidence supported that Cheryl's medically determinable mental impairments cause only mild limitations in any functional area and minimal limitation in her ability to do basic work activities. (Tr. 20-21.) Neither of the state agency medical consultants found any attendance-related limitations after review of the record and both determined that she could sit and stand for six hours of an eight-hour workday. (Tr. 24, 71-108.) And, as discussed above, the ALJ also reviewed the record and appropriately relied on the evidence and the prior administrative medical findings regarding her physical impairments. Thus, "the ALJ's RFC finding here with its established

---

at *7 (D.R.I. May 1, 2025); *Lisa M. v. Dudek*, C.A. No. 24-196-PAS, 2025 WL 723736, at *6 (D.R.I. Mar. 6, 2025); *Christine L. v. Colvin*, C.A. No. 24-00145-LDA, 2024 WL 5118440, at *7 (D.R.I. Dec. 16, 2024); *Thomas L.*, 2024 WL 4948805, at *8; *Steven A. v. O'Malley*, C.A. No. 23-544-WES, 2024 WL 4344865, at *4 (D.R.I. Sept. 30, 2024).

limitations necessarily means that Plaintiff can handle a regular work schedule." *See Thomas L.*, 2024 WL 494805, at *8.

### C. Medication Side Effects

Finally, Cheryl contends that the ALJ erred in failing to consider her own written testimony about the side effects of Xanax when formulating her RFC, which she insists "can easily contribute to time off-task during the work day." (ECF No. 14 at 14.) The Commissioner responds that she cannot show error by relying on subjective allegations unsupported by the record. (ECF No. 16 at 12.)

Cheryl relies exclusively on a single Function Report in which she self-reported that Xanax makes her tired. (Tr. 266.) As noted by the Commissioner, Cheryl cites no *medical* evidence in the record to support that she experienced drowsiness as a side effect or that this side effect would call for a more restrictive RFC (*id.*), and indeed, no such indication exists in the medical record. Such unsupported allegations do "not require the ALJ to explicitly address Plaintiff's alleged medication side effects in the decision." *See Thomas L.,* 2024 WL 4948805, at *8.[4] As such, there was no error by the ALJ in not considering Cheryl's own report of tiredness.

---

[4] In support of the argument regarding Cheryl's pain medication, Counsel relies on *Musto v. Halter*, 135 F. Supp. 2d 220 (D. Mass. 2001). This Court has explicitly disagreed with Counsel's characterization of *Musto* in prior opinions, noting that in that case "the claimant offered inconsistent testimony about his medications and side effects that the district court found 'more confusing than informative,' and the ALJ did not further question the claimant to develop the record and gain clarity." *Christine L.*, 2024 WL 5118440, at *6. Here, as in *Christine*, Counsel's brief "fails to identify any evidence in the medical record that supports [Cheryl's] argument that her drowsiness 'can easily contribute' to time off task," *id.*; indeed, Counsel uses the exact quoted language in his brief in this case as in *Christine.* (ECF No. 14 at 14.) Plaintiff's Counsel has been admonished in the past for arguing legal principles that this Court has clearly rejected, *see Emily C.*, 2025 WL 1263715, at *6 fn. 1, and is reminded of his ongoing obligation of candor toward the tribunal pursuant to Rhode Island Rule of Professional Conduct 3.3(a)(2), which requires disclosure of directly adverse legal authority in the controlling jurisdiction that is not disclosed by opposing counsel.

## V. CONCLUSION

For the reasons discussed herein, Plaintiff Cheryl's Motion to Reverse the Decision of the Commissioner (ECF No. 14) is DENIED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 16) is GRANTED.  The Clerk shall enter Final Judgment in favor of Defendant.

 /s/  Amy E. Moses
AMY E. MOSES
United States Magistrate Judge

November 13, 2025